KEKER & VAN NEST, LLP
JON B. STREETER - #101970
COURTNEY TOWLE - #221698
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Defendants
ROBERT WERRA and JOHN WERRA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| 21X CAPITAL LTD. and DAVID A. BREWER,<br><br>                              Plaintiffs,<br><br>    v.<br><br>ROBERT WERRA and JOHN WERRA,<br><br>                              Defendants. | Case No. C06-04135 JW (HRL)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER FROM 21X CAPITAL, LTD.'S FIRST SETS OF SPECIAL INTERROGATORIES**<br><br>Date:       October 2, 2007<br>Time:      10:00 a.m.<br>Dept:       Courtroom 2, Fifth Floor<br>Judge:     Magistrate Judge Howard R. Lloyd<br><br>Date Comp. Filed:     June 1, 2006<br><br>Trial Date: |

# TABLE OF CONTENTS

**Page**

I.  Introduction ...................................................................................................................... 1

II. Facts ................................................................................................................................. 2

    A.  Background ............................................................................................................ 2

    B.  The 50 Interrogatories ............................................................................................ 2

    C.  The Parties Met & Conferred ................................................................................. 4

III. LEGAL STANDARD ..................................................................................................... 4

    A.  Argument ............................................................................................................... 6

        1.  Because the Parties to this Lawsuit Are "Nominally Separate," the 25 Interrogatory Limit Should Apply *Per Side* .................................. 7

        2.  Requiring a Response to the 50 Interrogatories Already Propounded, and Potentially 50 more, Would Be Unduly Burdensome and Abusive ................................................................... 7

        3.  A Reasonable Limit on the Number of Interrogatories Each Side May Propound Is Needed to Protect Against the Burden of Responding to 50 to 100 Interrogatories ................................................. 10

IV. Conclusion ..................................................................................................................... 11

i

Memorandum Of Points And Authorities In Support Of Defendants' Motion For Protective Order From 21x Capital, Ltd.'S First Set Of Special Interrogatories
Case No. C06-04135 JW (HRL)

401333.03

# TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

*Larson v. Snook,*
  6:05-cv-686-ORL-31JGG, 2006 U.S. Dist. LEXIS 78028 at*9 (M.D. Fl.
  2006) .................................................................................................................... 6, 9

*Sheehy v. Wehlage,*
  02CV592A, 2006 U.S. Dist. LEXIS 56310 at **12-13 (W.D.N.Y. 2006) ................................. 6

*St. Paul Fire and Marine Ins. Co. v. Birch,*
  217 F.R.D. 288 (D. Mass. 2003) ........................................................................................ 6

*Trevino v. ABC Am., Inc.,*
  232 F.R.D. 612 (N.D. Cal. 2006) ................................................................................. 6, 10

*Vinton v. Adam Aircraft Indus.,*
  232 F.R.D. 650 (D.Colo. 2005) ..................................................................................... 5, 7

*Zamora v. D'Arrigo Bros. Co.,*
  C04-00047 JW (HRL), 2006 U.S.Dist. LEXIS 21208 at *10 (N.D. Cal.
  2006) ................................................................................................................... 5, 10

*Zito v. Leasecomm Corp.,*
  233 F.R.D. 395 (S.D.N.Y. 2006) ............................................................................ 5, 6, 9

### Other Authorities

Federal Practice and Procedure
  § 2168.1 at 261 (2d ed. 1994) ........................................................................................... 5

*Moore's Federal Practice*
  § 33 App.05[2] (3d.ed 1997) ....................................................................................... 5, 10

### Rules

Federal Rule of Civil Procedure 26(b)(1) ........................................................................... 5

Federal Rule of Civil Procedure 26(b)(2) ......................................................................... 10

Federal Rule of Civil Procedure 26(b)(2)(A) ...................................................................... 5

Federal Rule of Civil Procedure 26(c) ............................................................................ 1, 6

Federal Rule of Civil Procedure 33 ........................................................................... passim

ii
Memorandum Of Points And Authorities In Support Of Defendants' Motion For Protective
Order From 21x Capital, Ltd.'S First Set Of Special Interrogatories
Case No. C06-04135 JW (HRL)

401333.03

## I.  INTRODUCTION

Plaintiffs 21X Capital Ltd. ("21X") and its principle David Brewer ("Brewer"), through 21X's first sets of interrogatories, embark on a campaign of overly burdensome discovery. Propounding a total of 50 interrogatories on the two individual defendants, Robert Werra and his son John Werra (the "Werras"), 21X has exhausted its total allotment of interrogatories per party under Federal Rule of Civil Procedure 33.  An examination of the interrogatories themselves demonstrates that, although propounded on each defendant individually, the answers are meant to illicit responses that will bind both Werras.  And Plaintiffs' counsel has indicated that another 50 interrogatories may be forthcoming, to be propounded from plaintiff Brewer.  The exhaustive nature of the 50 interrogatories propounded is itself unduly burdensome, but the prospect of another 50 is abusive particularly where, as here, the case centers on allegations that the two individual defendants are alter egos of a bankrupt company.

Plaintiffs' tactics should not be allowed.  There is good reason for limiting discovery, particularly the number of interrogatories, where such discovery is abusive or unduly burdensome and where the burdens of the discovery sought outweigh the benefits.  Responding to 50 and potentially 100 interrogatories is a daunting, time-consuming task that will require extensive time and effort on the part of two individuals.  Further, courts recognize that the presumptive 25 interrogatory limitation applies to each *side* of the litigation where the parties are nominally separate.  This case involves nominally separate parties – a single cause of action brought by a plaintiff company and its principle, both represented by the same counsel, and defendants, two individuals, also represented by the same counsel.  Even if the interrogatory limit does not presumptively apply per side, given the detail requested in the 50 interrogatories already propounded, requiring the Werras to respond to 50 to 100 interrogatories would be unduly burdensome and excessive.  Instead, consistent with the intent of Rule 33's presumptive limit, the total number of interrogatories both sides can propound should be limited to a reasonable number.

Accordingly, pursuant to Rules 26(c) and 33, defendants hereby move for a protective order from the 50 interrogatories already propounded by 21X , and for an order setting a

1

1  reasonable limit on the total number of interrogatories each side in this case may propound.

## II.     FACTS

**A.     Background**

There is a lengthy litigation history between these parties.  The Werras were both shareholders in RJW Acquisitions, L.C. ("RJW").  In 2003, RJW filed suit against 21X, Brewer and others asserting breach of an agreement, conversion and related torts.  The RJW case was tried in the California Superior Court of the County of Santa Clara in January of 2005, case 31-03-CV-816191 (the "Santa Clara Litigation").  After the close of evidence, judgment was rendered against RJW on defendants' counterclaims.  RJW later petitioned for bankruptcy in the U.S. Bankruptcy Court for the Eastern District of Texas.  The present case, filed in June 2006, was stayed pending the bankruptcy proceedings.  In June 2007, the stay was lifted and discovery commenced.

Plaintiffs are now suing the Werras individually for recovery of the judgment rendered against RJW, attorneys' fees, and non-statutory costs in connection with the Santa Clara Litigation.  Plaintiffs allege the Werras are liable as the alter egos of RJW and bring a single cause of action – an action on the judgment.[1]

**B.     The 50 Interrogatories**

On July 23, 2007, 21X propounded 25 interrogatories on each of the Werras.[2]  Only three interrogatories – Nos. 1, 24 and 25 – are posed to each defendant.[3]  The remaining 44 interrogatories present 44 different questions.

The interrogatories propounded on Robert Werra seek details of RJW transactions or dealings requesting "any and all" details from "each and every person or entity."  For example:

- Describe in detail all monies which have ever been provided to RJW by any person or entity.  (Ex. 2, Interrogatory No. 2 to Robert Werra);

---

[1] First Amended Complaint at ¶¶ 58-60, attached as Exhibit 1 to the Declaration of Courtney Towle In Support of Defendants' Motion for a Protective Order ("Towle Decl.").

[2] On the same day, 21X propounded two sets of requests for production, eighty-three requests on Robert Werra and eighty-four requests on John Werra.

[3] Towle Decl., Exhibits 2 (21X's First Set of Interrogatories to Robert Werra) and 3 (21X's First Set of Interrogatories to John Werra).

2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER
FROM 21X CAPITAL, LTD.'S FIRST SET OF SPECIAL INTERROGATORIES
CASE NO. C06-04135 JW (HRL)

- Describe in detail all payments which have ever [been] made by any person or entity on behalf of RJW. (Ex. 2, Interrogatory No. 3 to Robert Werra);

- *Identify each and every person or entity* which made payments to RJW's lawyers…. (Ex. 2, Interrogatory No. 5 to Robert Werra, emphasis added);

- *Identify each and every person or entity* which made payments to *each* of the experts retained to provide services to RJW…. (Ex. 2, Interrogatory No. 6 to Robert Werra, emphasis added);

- *[I]dentify each and every person or entity* which made payments to each vendor that provided services to RJW…. (Ex. 2, Interrogatory No. 7 to Robert Werra, emphasis added).

Interrogatory Nos. 4, 8-9, and 21 are similarly phrased. Interrogatory No. 10 requests a description "in detail [of] the transaction whereby RJW's appeal in the State Court Litigation was purchased," while Interrogatory Nos. 11 and 14 ask for details of payments "by any entity or individual." Interrogatory No. 13 requests a "[description] in detail [of] any and all financial transactions between any owners of RJW (including but not limited to you and John Werra) and RJW itself." Interrogatory Nos. 15-20 ask for detailed descriptions of RJW transactions or accounts.

John Werra received similarly broad interrogatories. At least eight of the interrogatories propounded on John Werra seek details of RJW transactions or dealings requesting "any and all" details from "each and every person or entity." This includes Interrogatory Nos. 8 and 9 and the following:

- Describe in detail *each and every equity or other ownership interest* held by any entity or person in RJW. (Ex. 3, Interrogatory No. 7 to John Werra, emphasis added);

- *Identify any and all* business contact information used by RJW. (Ex. 3, Interrogatory No. 10 to John Werra, emphasis added);

- *Describe in detail any and all* lease and/or rental payments made by RJW. (Ex. 3, Interrogatory No. 11 to John Werra, emphasis added);

- To the extent RJW transferred *any* property, assets or rights to *any* individual or entity within the past five (5) years, *describe all such transactions in detail*. (Ex. 3, Interrogatory No. 12 to John Werra, emphasis added);

- *Describe in detail each and every* checking, deposit, savings or other account which RJW had…. (Ex. 3, Interrogatory No. 14 to John Werra,

emphasis added);

- *Describe in detail* the business that RJW was conducting from 2000 to the present. (Ex. 3, Interrogatory No. 23 to John Werra, emphasis added).

The interrogatories propounded on John Werra further seek details of the "nature of RJW's business" and "analysis of RJW's assets and liabilities" at different points in time (Interrogatory Nos. 2-4); a description of all instances of payment to any of RJW's creditors and/or vendors, (Interrogatory Nos. 5 and 6); "all facts which support" each asserted affirmative defense (Interrogatory Nos. 15-21); and "[d]escribe in detail what was meant by the claim that RJW was 'doing business as' 20/20 Technologies, Inc. in every instance when such phrase or claim was used" (Interrogatory No. 22).

**C.     The Parties Met & Conferred**

Counsel met and conferred after receiving service of the 21X interrogatories. The Werras' counsel raised its concern that responding to the 50 interrogatories propounded posed an undue burden.[4] Plaintiffs counsel indicated additional interrogatories may be served from Brewer.[5] Counsel for the Werras suggested the parties reach agreement as to a reasonable limit on the number of interrogatories per side in this litigation.[6] The Werras' counsel proposed that each side be limited to 30 interrogatories in total and, as plaintiffs' side had already propounded more than this number of interrogatories, requested that plaintiffs withdraw the 50 interrogatories propounded and re-serve after the parties reached a compromise. Plaintiffs' counsel rejected this proposal and made no counter proposal.[7]

### III.     LEGAL STANDARD

Federal Rule of Civil Procedure 33 limits the number of interrogatories that can be propounded by "any party" to "any other party" to 25 without leave of court. According to the notes from the Committee that added the numerical limit, the limit aimed to make use of this

---

[4] Towle Decl. at ¶ 2.
[5] *Id.*
[6] *Id.*
[7] Towle Decl. at ¶ 3.

4

1  discovery tool manageable:

2  > Experience in over half of the district courts has confirmed that
limitations on the number of interrogatories are useful and
3  > manageable.  Moreover, because the device can be costly and may
be used as a means of harassment, it is desirable to subject its use
4  > to the control of the court consistent with the principles stated in
Rule 26(b)(2)….

5

6  7 James. W. Moore et al., *Moore's Federal Practice* § 33 App.05[2] (3d.ed 1997) (Committee

7  Note of 1993 Amendment).  Requests to exceed the numerical limitation may be granted where

8  there is a showing of good cause.  Fed. R. Civ. P. 26(b)(1) and 26(b)(2)(A).

9      Though a literal reading of the rule allows *each party* to propound 25 interrogatories on

10 *each other party*, courts have recognized that allowing each named plaintiff to propound the

11 maximum number of interrogatories on each named defendant does not always accord with the

12 purpose of Rule 33's limitation.  *See Vinton v. Adam Aircraft Indus.,* 232 F.R.D. 650, 664

13 (D.Colo. 2005); *Zito v. Leasecomm Corp.,* 233 F.R.D. 395, 399 (S.D.N.Y. 2006).  Instead,

14 applying the limit to each "side" may be a more "sensible approach." *Zito,* 233 F.R.D. at 399

15 citing Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and

16 Procedure § 2168.1 at 261 (2d ed. 1994).

17     Applying the 25 interrogatory limit *per side* is appropriate where the parties are

18 "nominally separate."  Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal

19 Practice and Procedure § 2168.1 at 261 (2d ed. 1994) ("[I]n some instances nominally separate

20 parties should be considered one party for purposes of the 25-interrogatory limitation.").  Factors

21 indicating "nominally separate" parties include representation by a single attorney, united acts, or

22 legal relationships between parties.  *Id.*  Alter ego cases in particular present "nominally

23 separate" sides.  *See Vinton,* 232 F.R.D. at 664 (upholding a 25 interrogatory limit where

24 defendant individual and company were allegedly alter egos).

25     In some cases, an excess of 25 interrogatories per side is appropriate.  This determination

26 may turn on consideration of the interrogatories propounded and the parties to the suit.  *Zamora*

27 *v. D'Arrigo Bros. Co.,* C04-00047 JW (HRL), 2006 U.S.Dist. LEXIS 21208 at *10 (N.D. Cal.

28 2006) (Hon. H. Lloyd) (ordering defendant corporation to answer 29 interrogatories propounded

5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER
FROM 21X CAPITAL, LTD.'S FIRST SET OF SPECIAL INTERROGATORIES
CASE NO. C06-04135 JW (HRL)

1  by four plaintiffs); *Trevino v. ABC Am., Inc.,* 232 F.R.D. 612, 614 (N.D. Cal. 2006) (Hon. H.
2  Lloyd) (allowing 34 and 32 interrogatories on two separate defendant corporations).  Whether
3  interrogatories in excess of the limit should be allowed varies case-by-case.  *See St. Paul Fire*
4  *and Marine Ins. Co. v. Birch*, 217 F.R.D. 288, 289 (D. Mass. 2003) (questioning the propriety of
5  allowing three defendants, a partnership and associated individuals, to propound 75
6  interrogatories).

7       Even if a litigation does not involve nominally separate parties, use of interrogatories
8  may be limited where the potential burden imposed in responding to interrogatories exceeds the
9  benefit of the discovery.  One-hundred-and-sixty-nine interrogatories propounded by three
10 defendants was abusive because they "divided the issues in this case into numerous subparts and
11 then demanded that each plaintiff identify witnesses and documents relevant to each separate
12 subpart." *Zito,* 233 F.R.D. at 399.  In *Sheehy v. Wehlage,* 02CV592A, a protective order was
13 granted where the potential burden of answering 114 interrogatories, including over 300
14 questions counting subparts, outweighed the benefit.  2006 U.S. Dist. LEXIS 56310 at **12-13
15 (W.D.N.Y. 2006); *see also Larson v. Snook,* 6:05-cv-686-ORL-31JGG, 2006 U.S. Dist. LEXIS
16 78028 at*9 (M.D. Fl. 2006) (finding unduly burdensome plaintiff's interrogatories which
17 requested identification "every piece of information and every document that supports its
18 position in the litigation").

19      When discovery tactics exceed reason, a protective order is appropriate to protect a party
20 or person from annoyance, embarrassment, oppression, or undue burden or expense.  Fed. R.
21 Civ. P. Rule 26(c)

22 **A.      Argument**

23      There is good cause to grant the Werras' motion for protective order and to set a
24 reasonable limit on the number of interrogatories per side in this litigation.[8]  First, because the
25 parties are nominally separate, the 25 interrogatory limit is applicable *per side.*  Second,
26 responding to 50 to 100 interrogatories would cause an undue burden.  Third, the intent of the

---

[8] The Werras here do not address the propriety of the interrogatories already propounded and
28 reserve any and all objections that may be made to each of these interrogatories.

6

numerical limitation in the rule and the burden of responding to 50 to 100 interrogatories compels implementation of a reasonable limit on the use of interrogatories by both sides.

### 1. Because the Parties to this Lawsuit Are "Nominally Separate," the 25 Interrogatory Limit Should Apply *Per Side*

There are no large corporations party to this lawsuit. There are no individuals with vastly separate circumstances. The Werras are two individuals, father and son, both of whom were shareholders in RJW. Both are allegedly alter egos of RJW. Both are represented by the same counsel. Plaintiffs are a limited liability company and its principle; both are represented by the same counsel. Both sides are related through their business dealings – Brewer as the principle of his co-plaintiff 21X, the Werras through their dealings as shareholders in RJW. Plaintiffs, in their single cause of action, seek action on the judgment of the Santa Clara Litigation. Also, as recognized in *Vinton v. Adam Aircraft Indus.,* Plaintiffs' allegations that both Werras are the alter egos of RJW weighs in favor of finding each side "nominally separate." 232 F.R.D. at 664. All of these factor indicate this case involves nominally separate parties.

Because this case involves nominally separate parties, Rule 33's 25 interrogatory limit should apply per side in this case. Plaintiffs have exceeded the 25 interrogatory limit by propounding 50 interrogatories.

### 2. Requiring a Response to the 50 Interrogatories Already Propounded, and Potentially 50 more, Would Be Unduly Burdensome and Abusive

The 50 interrogatories already propounded from 21X request an exhaustive amount of detailed information, and Plaintiffs' counsel has indicated additional interrogatories may be propounded from Brewer.[9] If Brewer also propounds on each defendant the full number of interrogatories presumptively allowed by Rule 33, defendants would have to respond to 100 interrogatories. Responding to 50 to 100 interrogatories is excessive and poses a daunting task.

Responding to the interrogatories already propounded would require significant time from each defendant. This is apparent from an examination of the interrogatories themselves.

---

[9] Towle Decl. at ¶ 2.

7

The twenty-five interrogatories propounded on Robert Werra request "any and all" details from "each and every person or entity" in at least nine interrogatories:

- Describe in detail all monies which have ever been provided to RJW by any person or entity.  (Ex. 2, Interrogatory No. 2 to Robert Werra);

- Describe in detail all payments which have ever [been] made by any person or entity on behalf of RJW….  (Ex. 2, Interrogatory No. 3 to Robert Werra);

- *Identify each and every person or entity* which made payments to RJW's lawyers….  (Ex. 2, Interrogatory No. 5 to Robert Werra, emphasis added);

- *Identify each and every person or entity* which made payments to each of the experts retained to provide services to RJW….  (Ex. 2, Interrogatory No. 6 to Robert Werra, emphasis added);

- *[I]dentify each and every person or entity* which made payments to *each* vendor that provided services to RJW….  (Ex. 2, Interrogatory No. 7 to Robert Werra, emphasis added).

Interrogatory Nos. 4, 8-9, and 21 are similarly phrased.  Interrogatory No. 10 requests a description "in detail [of] the transaction whereby RJW's appeal in the State Court Litigation was purchased," while Interrogatory Nos. 11 and 14 asks for details of payments "by any entity or individual."  Interrogatory No. 13 requests a "[description] in detail [of] any and all financial transactions between any owners of RJW (including but not limited to you and John Werra) and RJW itself." Interrogatory Nos. 15-20 ask for detailed descriptions of RJW transactions or accounts.

John Werra is similarly faced with 25 interrogatories seeking responses that include minute detail of many issues.  At least eight of the interrogatories propounded on John Werra seek details of RJW transactions or dealings requesting "any and all" details from "each and every person or entity", as set forth in Interrogatory Nos. 8 and 9 and in the following:

- Describe in detail *each and every equity or other ownership interest* held by any entity or person in RJW.  (Ex. 3, Interrogatory No. 7 to John Werra, emphasis added);

- *Identify any and all* business contact information used by RJW.  (Ex. 3, Interrogatory No. 10 to John Werra, emphasis added);

- *Describe in detail any and all* lease and/or rental payments made by RJW. (Ex. 3, Interrogatory No. 11 to John Werra, emphasis added);

8

- To the extent RJW transferred *any* property, assets or rights to *any* individual or entity within the past five (5) years, *describe all such transactions in detail*.  (Ex. 3, Interrogatory No. 12 to John Werra, emphasis added);

- *Describe in detail each and every* checking, deposit, savings or other account which RJW had….  (Ex. 3, Interrogatory No. 14 to John Werra, emphasis added);

- *Describe in detail* the business that RJW was conducting from 2000 to the present.  (Ex. 3, Interrogatory No. 23 to John Werra, emphasis added).

The interrogatories propounded on John Werra further seek details of the "nature of RJW's business" and "analysis of RJW's assets and liabilities" at different points in time (Interrogatory Nos. 2-4); a description of all instances of payment to any of RJW's creditors and/or vendors, (Interrogatory Nos. 5 and 6); "all facts which support" each asserted affirmative defense (Interrogatory Nos. 15-21); "[d]escribe in detail what was meant by the claim that RJW was 'doing business as' 20/20 Technologies, Inc. in every instance when such phrase or claim was used" (Interrogatory No. 22).

Nearly all 50 interrogatories request broad, detailed responses applicable to both defendants.  For instance, there is a request for a "[description] in detail [of] any and all financial transactions between any owners of RJW" and request that "[t]o the extent payments have ever been made to any of RJW's creditors and/or vendors by any entity or individual other than RJW, describe all such instances in detail."  Towle Decl. at Ex. 2 (Interrogatory No. 13 to Robert Werra) and Ex. 3 (Interrogatory Nos. 5 and 6 to John Werra).

Plaintiffs' 50 interrogatories have divided the issues in this case into numerous and narrow subparts and request identification of every piece of information that supports its position in the litigation.  *See Zito ,* 233 F.R.D. at 399; *Larson,* 2006 U.S. Dist. LEXIS at*9.  Responses to the highly detailed interrogatories would require substantial time and expense, and would provide little additional benefit than would responses to fewer, more targeted interrogatories.

Plaintiffs show a disregard for the purpose of the Rule's limit on interrogatories.  As the 1993 Committee Notes state, "limitations on the number of interrogatories are useful and manageable" and that "[because interrogatories] can be costly and may be used as a means of

9

1  harassment, it is desirable to subject its use to the control of the court consistent with the

2  principles stated." 7 James W. Moore et al., *Moore's Federal Practice* § 33 App.05[2] (3d. ed

3  1997) (Committee Note of 1993 Amendment).  The 50 interrogatories already propounded on the

4  Werras are abusive and responding to all of these interrogatories poses an undue burden.  The

5  prospect of responding to an additional 50 interrogatories will only add to the undue burden and

6  abuse.

### 3. A Reasonable Limit on the Number of Interrogatories Each Side May Propound Is Needed to Protect Against the Burden of Responding to 50 to 100 Interrogatories

The 25 interrogatory limit was introduced to aid management of discovery and to lessen instances of undue burden or abuse through this discovery tool.  7 James W. Moore et al., *Moore's Federal Practice* § 33 App.05[2] (3d. ed 1997).  Consistent with the Committee's intent, the Werras propose limiting the total number of interrogatories per side to 30.[10]  Thirty is a reasonable, manageable number of interrogatories given the nature of the case and the parties.  Defendants further request that Plaintiffs withdraw the pending 50 interrogatories and, once a reasonable limit is in place, resubmit their interrogatories in light of that limit.  The limit would, of course, be applicable to both sides in this litigation.  Despite the Werras' proposal, the parties have not reached a compromise.

Plaintiffs have demonstrated their intention to embark on a campaign of broad and exhaustive discovery.  In addition to the interrogatories at issue here, Plaintiffs have also propounded more than one-hundred-and-sixty document requests on the Werras.  Defendants seek to limit at least the number of interrogatories in this case to a manageable number.

In cases involving corporations or individuals with vastly different circumstances, allowing more than 25 interrogatories may be appropriate.  *See Zamora,* 2006 U.S. Dist. LEXIS 21208 at**9-10; *Trevino,* 232 F.R.D. at 614.  Here, however, allowing up to 100 interrogatories does not accord with the intent of the limit in Rule 33 or with the balancing required under Rule 26(b)(2).  The plaintiffs, an individual and his limited liability corporation, the two individual

---

[10] Towle Decl. at ¶ 2.

10

defendants, and the nature of the case indicate that limiting the total number of interrogatories far below 100 or even 50 will allow for better manageability of discovery and will balance of the burdens of the discovery sought against the benefits.  This court should exercise its discretion and impose a reasonable limitation.

## IV. CONCLUSION

For all the above reasons, Defendants request that this Court grant Defendants' motion for a protective order from 21X's First Set of Special Interrogatories to Defendant John Werra and Plaintiff 21X's First Set of Special Interrogatories to Defendant Robert Werra.  Further Defendants request an order setting a reasonable limit on the total number of interrogatories each side in this case may propound.

Dated:  August 27, 2007                                         KEKER & VAN NEST, LLP


By: /s/ Courtney Towle
    COURTNEY TOWLE
    Attorneys for Defendants
    ROBERT WERRA and JOHN WERRA

### RULE 26 CERTIFICATION

The undersigned certifies that counsel for Plaintiffs 21X and Brewer has been contacted and the parties have been unable to resolve the issues presented in this Motion.


/s/ Courtney Towle
Courtney Towle (#221698)